IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

RODNEY CAMERON DAVIS,

      Petitioner,

v.                                         Civil Action No. 3:09CV37

R. W. MITCHELL,

      Respondent.

## MEMORANDUM OPINION

Petitioner Rodney Cameron Davis, a former Virginia state inmate proceeding *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Davis challenges his convictions for two counts of distribution of cocaine. Respondent filed a motion to dismiss with appropriate *Roseboro*[2] notice contending that Davis's claims are procedurally defaulted. The Court denied Respondent's motion to dismiss and ordered supplemental briefing. The parties have filed supplemental briefing, and the matter is ripe for adjudication. Jurisdiction exists under 28 U.S.C. §§ 636(c) and 2254. For the reasons that follow, the Court will DENY Davis's § 2254 Petition.

---

[1] 28 U.S.C. § 2254 states in relevant part:

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

## I.  Procedural History

On July 14, 2004, Davis pled guilty to two counts of distribution of cocaine in the Circuit

Court of Fairfax County ("Circuit Court").  On December 17, 2004, the Circuit Court sentenced

Davis to two terms of imprisonment for ten years with four years and eight months suspended on

each count.  Additionally, the Circuit Court imposed a three-year term of post release supervision

on each count.  The Circuit Court ordered the sentences to run concurrently with each other, but

consecutively with a separate sentence imposed in Arlington County for a different distribution

conviction.  On June 9, 2005, the Circuit Court entered final judgment after denying various

post-trial motions.

### A.    State Habeas Review

On January 10, 2006, Davis filed a state habeas petition, raising the following claims:[3]

Claim a      Trial Counsel's ineffective pretrial assistance acted to violate my
             Constitutional rights.  Bobby B. Stafford failed and refused to make proper
             trail preparations, interview witnesses, or conduct proper legal research.

Claim b      Trail Counsel's ineffective assistance as to plea acted to violate my
             Constitutional rights.  Bobby B. Stafford failed or refused to conduct a
             reasonably adequate investigation or provide me with reasonably
             competent advice before urging me to enter a plea of guilty; thus rendering
             my plea unintelligent.

Claim c      Trail counsel's ineffective assistance as to sentencing acted to violate my
             Constitutional rights.  Bobby B. Stafford deprived me of a fair sentencing
             hearing by failing or refusing to aid in marshaling the facts, introducing
             evidence of mitigation, and in generally aiding and assisting me in the
             presentation of my case as to sentencing.

Claim d      Trial and post-conviction counsels' ineffective assistance as to appeal,
             acted to violate my Constitutional rights.  Bobby B. Stafford, David
             Bahuraik, and Edward Crisonino acted to deprive me of my right as to

---

[3] Davis's claims are reproduced verbatim, with any errors of spelling or grammar intact.

appeal by failing or refusing to investigate appealable issues, advise me of my rights as to appeal, or timely file notice of appeal.

Claim e    The Commonwealth's Attorney for Fairfax County acted, in violation of my Constitutional rights, by materially breaking the terms of my plea of guilty.

Claim f    The Commonwealth's Attorney for Fairfax County acted in violation of my Constitutional rights by the presentation and use of false, improper, misleading, and unsubstantiated evidence; thus depriving me of a full and fair hearing.

Claim g    The Commonwealth's Attorney for Fairfax County acted in violation of my Constitutional rights by failing or refusing to correct false, improper, misleading, and unsubstantiated evidence.

Claim h    The Commonwealth's Attorney for Fairfax County acted in violation of my Constitutional rights by using improper methods at trail calculated to produce unjust results.

Claim i    The Commonwealth's Attorney For Fairfax County acted in violation of my Constitutional rights by engaging in selective prosecution.

Claim j    The Commonwealth's Attorney for Fairfax County acted in violation of my Constitutional rights by referring to my post-Miranda silence as a sign of deception on my part.

Claim k    The Commonwealth's Office of Probation acted in Violation of my Constitutional rights by failing or refusing to ensure the accuracy, completeness, fairness, or reliability of the information included in and used in the creation of my Presentencing Investigation.

Claim l    The Commonwealth's Office of Probation acted in violation of my Constitutional rights by being willfully deceptive to me as well as the Court.

Claim m    Trial Judge acted in violation of my Constitutional rights by failing to ensure the accuracy, reliability, or fairness of the information used in my sentencing.

Claim n    Trial Judge acted in violation of my Constitutional rights by denying me the opportunity to ensure the accuracy of the information proffered during my sentencing hearing.

3

Claim o        Trail Judge acted in violation of my Constitutional rights by predicating
               my sentence on assumptions not founded in the evidence or which were
               materially false.

Claim p        Trail Judge acted in violation of my Constitutional rights by predicating
               her finding of guilt on assumptions not founded in the evidence or which
               were materially false.

Claim q        Trial Judge acted in violation of my Constitutional rights by not
               withholding her determination of guilt until sentencing as agreed.

Claim r        Trial Judge acted in violation of my Constitutional rights by not
               instructing me as to appeal.

(Pet. Ex. 1, at 6-8.)

On October 26, 2006, the Circuit Court granted in part and denied in part the petition.

*Davis v. Johnson*, No. CL-2006-395 (Va. Cir. Ct. Oct. 26, 2006) (hereinafter "State Hab. Op.").

The Circuit Court rejected Claims e through r because Davis had not raised the issues on trial and

appeal, *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), because Davis's claims contradicted

representations made during his plea proceedings, *Anderson v. Warden*, 281 S.E.2d 885, 888

(Va. 1981), and because the claims were too conclusory to state a claim for relief pursuant to

*Penn v. Smyth*, 49 S.E.2d 600, 601 (Va. 1948). State Hab. Op. 7-8. The Circuit Court rejected

Claims a through c on two alternate grounds, finding that: (1) Davis's submissions did not

demonstrate that counsel had rendered ineffective assistance and, (2) Davis's "self-serving

complaints about [his trial counsel,] Mr. Stafford[,] are blatantly and wholly inconsistent with

what [Davis] said when he pled guilty. [*See Anderson*, 281 S.E.2d at 888]." State Hab. Op. 9.

The Circuit Court granted relief on Claim d, and allowed Davis to file a belated appeal. The

remaining claims were dismissed with prejudice.

4

Davis appealed the Circuit Court's denial of the claims other than Claim d. The Supreme

Court of Virginia affirmed the Circuit Court's ruling because Davis did not challenge the Circuit

Court's application of *Anderson*, which constituted an independent ground for the Circuit Court's

judgment. *Davis v. Johnson*, 652 S.E.2d 114, 117-18 (Va. 2007).

### B. Belated Appeal Proceedings

Davis raised the following claims on direct appeal:

Claim 1      The Circuit Court erred in finding that Davis's guilty plea was made
             voluntarily with an understanding of the nature of the charge and the
             consequences of the plea.

Claim 2      The Circuit Court erred in sentencing Davis to a ten-year term of
             incarceration with four years and eight months suspended despite language
             in the plea forms indicating that any sentence of incarceration would be
             followed by "'an additional term of not less than six months nor more than
             three years, all of which shall be suspended, conditioned upon successful
             completion of a period of post release supervision.'"

Petition for Appeal at 5, *Davis v. Commonwealth*, No. 3177-06-4 (Va. Ct. App. filed Apr. 2,

2007).

On July 6, 2007, the Court of Appeals rejected both claims because they had not been

raised at trial, in violation of Rule 5A:18[4] of the Rules of the Supreme Court of Virginia. *Davis*

*v. Commonwealth*, No. 3177-06-4 (Va. Ct. App. July 6, 2007). On November 28, 2007, the

Supreme Court of Virginia refused Davis's appeal.

---

[4] Rule 5A:18 provided: "No ruling of the trial court . . . will be considered as a basis for
reversal unless the objection was stated together with the grounds therefor at the time of the
ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of
justice. A mere statement that the judgment or award is contrary to the law and the evidence is
not sufficient to constitute a question to be ruled upon on appeal." Va. Sup. Ct. R. 5A:18 (2007).

C.    **Claims Raised in the Instant Petition**

Davis raises the following claims in his federal habeas petition:[5]

Claim A        Trial counsel's ineffective pre-trial assistance acted to violate petitioner's
               6th Amendment Constitutional rights to effective counsel.  Bobby Stafford
               failed and refused to make proper trial preparations, interview witnesses,
               or conduct proper legal research.  (Pet. Ex. 2, at 1.)
               1.    Trial counsel failed to analyze the Commonwealth's evidence or
                     interview material, exculpatory witnesses.
               2.    Trial counsel failed to disclose a prior "closed head injury."  (*Id.*)
               3.    Trial counsel failed to investigate possible defenses.

Claim B        Trial Counsel's ineffective assistance as to plea acted to violate the
               petitioner's 6th Amendment Constitutional rights to effective counsel.
               Mr. Stafford failed or refused to conduct a reasonably adequate
               investigation or provide the petitioner with reasonably competent advice
               before urging the petitioner to enter a plea of guilty, thus rendering the
               petitioner's plea unintelligent.  (*Id.* at 6.)
               1.    Trial counsel failed to advise the petitioner as to available
                     defenses.
               2.    Trial counsel misrepresented the sentence the petitioner would
                     receive if the petitioner entered a guilty plea.
               3.    Trial counsel told the petitioner that the Circuit Court would defer
                     making a finding of guilt until sentencing and that he could
                     withdraw his plea if no finding of accommodation was made.

Claim C        Trial counsel's ineffective assistance as to sentencing acted to violate
               petitioner's 6th Amendment Constitutional rights to effective counsel.
               Bobby B. Stafford deprived the petitioner of a fair sentence hearing by
               failing or refusing to aid in marshalling the facts, introducing evidence of
               mitigation, and in generally acting and assisting the petitioner in the
               presentation of his case as to sentencing.  (*Id.* at 9.)
               1.    Trial counsel failed to challenge the Court's assertion that "there is
                     no plea agreement" in the petitioner's case.  (*Id.*)
               2.    Trial counsel failed to challenge the Commonwealth's breach of
                     the terms of the petitioner's plea of guilty.  (*Id.* at 10.)

---

[5] These claims are also reproduced without alteration.  While Davis divides many claims
into sub-parts, other claims contain multiple parts but are not specifically divided.  For ease of
reference, the Court delineates these claims into sub-parts as well.

3.     Trial counsel failed to object to, correct, or refute the possible chain of custody issues with the drug evidence presented in the petitioner's case. (*Id.* at 11.)

4.     Trial counsel failed to challenge the use of "spontaneous statements" used against the petitioner. (*Id.*)

5.     Trial counsel failed to challenge questions regarding the weight of the drug evidence and later accepted this questionable drug evidence without objection, correction, or refutation. (*Id.* at 14.)

6.     Trial counsel failed to challenge the fact that the Court found the petitioner guilty without withholding the Court's finding of guilt until sentencing as agreed. (*Id.* at 16.)

7.     Trial counsel failed to marshal the facts by challenging or correcting the Court's confusion. (*Id.* at 18.)

8.     Trial counsel failed to challenge, and in some cases encouraged, the Court's rush to judgment. (*Id.* at 20.)

9.     Trial counsel failed to challenge misconduct on the part of the Commonwealth's Probation Officer and did not question or examine the Commonwealth's Probation Officer. (*Id.* at 22.)

10.     Trial counsel made confusing and incoherent statements to the Court during the course of representing the petitioner at hearing. (*Id.* at 24.)

11.     Trial counsel did not challenge the Commonwealth's Attorneys for Fairfax County's introduction and use of false testimony as to why the petitioner was targeted. (*Id.* at 25.)

12.     Trial counsel did not challenge the Commonwealth's Attorneys for Fairfax County's introduction of false prior criminal acts committed by the petitioner. (*Id.*, at 26.)

13.     Trial counsel did not challenge the Commonwealth's Attorneys for Fairfax County's introduction of unrelated prior bad acts allegedly committed by the petitioner. (*Id.* at 27.)

14.     Trial counsel did not challenge the Commonwealth's Attorneys for Fairfax County's assertion that the petitioner "had no credibility" due to "inconsistencies" in the petitioner's *offender's version* statement. (*Id.* at 29.)

15.     Trial counsel did not challenge the Commonwealth's Attorneys for Fairfax County's assertion that the petitioner was a predator. (*Id.*)

16.     Trial counsel did not challenge the Commonwealth's Attorneys for Fairfax County's assertion that the petitioner was not nervous during the meetings with detective Carroll. (*Id.* at 30.)

17.     Trial counsel did not challenge the Commonwealth's Attorneys for Fairfax County's proffer that the petitioner was "a careful and cleaver, if you will, negotiator of progressively larger drug deals." (*Id.* at 32.)

7

18. Trial counsel did not challenge the Commonwealth's Attorneys for Fairfax County's use of the petitioner post-*Miranda* silence as an indicator of deception on the part of the petitioner. (*Id.*)

19. Trial counsel did not challenge the Commonwealth's Attorneys for Fairfax County's assertion that the petitioner's testimony was inconsistent. (*Id.* at 33.)

20. Trial counsel did not challenge the Court's comments as to the mental fitness of the petitioner. (*Id.* at 35.)

21. Trial counsel did not effectively present the petitioner's case as to duress, diminished capacity, accommodation, nor restitution. (*Id.* at 36.)

22. Trial counsel refused to call available material and character witnesses. (*Id.* at 37.)

23. Trial counsel did not allow the petitioner to review the petitioner's "offender's version statement" and then consented to multiple versions of the same to be included in the petitioner's PSI without objection or correction. (*Id.* at 39.)

24. Trial counsel opened the door for the Commonwealth's Attorneys for Fairfax County to introduce unrelated prior bad acts allegedly committed by the petitioner. (*Id.* at 40.)

25. Trial counsel did not challenge the introduction of speculative testimony by prosecution witness as to the petitioner's use of a cell phone. (*Id.* at 41.)

26. Trial counsel did not challenge the introduction of testimony by prosecution witness as to the quantity of cocaine seized on May 20, 2003. (*Id.* at 42.)

27. Trial counsel did not challenge the introduction of testimony by prosecution witness as to the money seized on May 20, 2003. (*Id.* at 43.)

28. Trial counsel did not challenge the introduction of testimony by prosecution witness as to spontaneous statements allegedly uttered by the petitioner on May 20, 2003. (*Id.* at 44.)

29. Trial counsel did not challenge the Commonwealth's Attorney for Fairfax County's selective prosecution of the petitioner. (*Id.* at 45.)

30. Trial counsel failed to ensure the accuracy of the information proffered during petitioner's sentencing hearing. (*Id.* at 46.)

31. Trial counsel presented unprepared witnesses for examination. (*Id.* at 48.)

Claim E[6]       The Commonwealth's Attorney for Fairfax County acted in violation of
                 the petitioner's 14th Amendment "Due Process" Constitutional rights by
                 materially breaking the terms of the petitioner's plea of guilty. (*Id.*)

Claim F          The Commonwealth's Attorney for Fairfax County acted in violation of
                 the petitioner's 5th Amendment *Miranda,* 14th Amendment "Due Process,"
                 and 6th Amendment "Confrontation Clause" Constitutional rights by the
                 presentation and use of false, improper, misleading and unsubstantiated
                 evidence, thus depriving the petitioner of a full and fair hearing. (*Id.* at
                 50.)
        1.       The Commonwealth's Attorneys for Fairfax County's introduced
                 and used false testimony as to why the petitioner was targeted.
                 (*Id.*)
        2.       The Commonwealth's Attorneys for Fairfax County's introduced
                 false, prior criminal acts committed by the petitioner. (*Id.* at 51.)
        3.       The Commonwealth's Attorneys for Fairfax County introduced
                 unrelated prior bad acts allegedly committed by the petitioner. (*Id.*
                 at 52.)
        4.       The Commonwealth's Attorneys for Fairfax County asserted that
                 the petitioner "had no credibility" due to "inconsistencies" in the
                 petitioner's offender's version statement. (*Id.* at 54.)
        5.       The Commonwealth's Attorneys for Fairfax County asserted that
                 the petitioner was a predator. (*Id.* at 55.)
        6.       The Commonwealth's Attorneys for Fairfax County asserted that
                 the petitioner was not nervous during the meetings with detective
                 Carroll. (*Id.*)
        7.       The Commonwealth's Attorneys for Fairfax County asserted that
                 the petitioner's testimony was inconsistent. (*Id.* at 57.)
        8.       The Commonwealth's Attorneys for Fairfax County proffered that
                 the petitioner was "a careful and cleaver, if you will, negotiator of
                 progressively larger drug deals." (*Id.* at 58.)
        9.       The Commonwealth's Attorney for Fairfax County used alleged,
                 pre-*Miranda*, "spontaneous statements" against the petitioner. (*Id.*
                 at 59.)
        10.      The Commonwealth's Attorneys for Fairfax County's asserted that
                 the petitioner's post-*Miranda* silence was an indicator of deception
                 on the part of the petitioner. (*Id.* at 61.)

Claim G          The Commonwealth's Attorney for Fairfax County acted in violation of
                 the petitioner's 5th Amendment *Miranda,* 14th Amendment "Due Process,"
                 and 6th Amendment "Confrontation Clause" Constitutional rights by

---

[6] The instant petition does not include a Claim D.

failing or refusing to correct false, improper, misleading and unsubstantiated evidence. (*Id.* at 62.)

Claim H    The Commonwealth's Attorney for Fairfax County acted in violation of the petitioner's 5th Amendment *Miranda,* 14th Amendment "Due Process," and 6th Amendment "Confrontation Clause" Constitutional rights by using improper, methods at trial calculated to produce unjust results. (*Id.* at 65.)

1.    The Commonwealth's Attorneys for Fairfax County's introduced and used false testimony as to why the petitioner was targeted. (*Id.*)

2.    The Commonwealth's Attorneys for Fairfax County's introduced false, prior criminal acts committed by the petitioner. (*Id.* at 66.)

3.    The Commonwealth's Attorneys for Fairfax County introduced unrelated prior bad acts allegedly committed by the petitioner. (*Id.* at 67.)

4.    The Commonwealth's Attorneys for Fairfax County asserted that the petitioner "had no credibility" due to "inconsistencies" in the petitioner's offender's version statement. (*Id.* at 69.)

5.    The Commonwealth's Attorneys for Fairfax County asserted that the petitioner was a predator. (*Id.* at 70.)

6.    The Commonwealth's Attorneys for Fairfax County asserted that the petitioner was not nervous during the meetings with detective Carroll. (*Id.*)

7.    The Commonwealth's Attorneys for Fairfax County asserted that the petitioner's testimony was inconsistent. (*Id.* at 72.)

8.    The Commonwealth's Attorneys for Fairfax County proffered that the petitioner was "a careful and cleaver, if you will, negotiator of progressively larger drug deals." (*Id.* at 73.)

9.    The Commonwealth's Attorney for Fairfax County used alleged, pre-*Miranda*, "spontaneous statements" against the petitioner. (*Id.* at 74.)

10.   The Commonwealth's Attorneys for Fairfax County's asserted that the petitioner's post-*Miranda* silence was an indicator of deception on the part of the petitioner. (*Id.* at 76.)

Claim I    The Commonwealth's Attorneys for Fairfax County acted in violation of petitioner's 14th Amendment "Equal Protection" Constitutional rights by engaging in selective prosecution. (*Id.* at 77.)

Claim J    The Commonwealth's Attorneys for Fairfax County acted in violation of the petitioner's 5th Amendment *Miranda* and 14th Amendment "Due Process" Constitutional rights by referring to petitioner's post-Miranda silence as a sign of deception on the petitioner's part. (*Id.* at 78.)

10

Claim K    The Commonwealth's Office of Probation acted in violation of the
           petitioner's 14th Amendment "Due Process" Constitutional rights by
           failing or refusing to ensure the accuracy, completeness, fairness, and, or
           reliability of the information included in and used in the creation of the
           petitioner's Pre-sentencing Investigation (PSI). (*Id.* at 79.)

Claim L    The Commonwealth's Office of Probation acted in violation of petitioner's
           14th Amendment "Due Process" Constitutional rights by being willfully
           deceptive to petitioner as well as the Court. (*Id.* at 80.)

Claim M    Trial Judge acted in violation of the petitioner's 14th Amendment "Due
           Process" Constitutional rights by failing to ensure the accuracy, reliability
           or fairness of the information used in petitioner's sentencing. (*Id.* at 82.)
           1.   The Circuit Court operated under the incorrect assumption that the
                petitioner was a self admitted "known drug dealer." (*Id.* at 83.)
           2.   The Circuit Court failed to ensure that the amount of cocaine used
                in formulating the petitioner's sentence was an accurate accounting
                of the cocaine the petitioner distributed for compensation.

Claim N    Trial Judge acted in violation of petitioner's 14th Amendment "Due
           Process" Constitutional rights by denying petitioner the opportunity to
           ensure the accuracy of the information proffered during petitioner's
           sentencing hearing. (*Id.* at 85.)

Claim O    Trial Judge acted in violation of petitioner's 14th Amendment "Due
           Process" Constitutional rights by predicating petitioner's sentence on
           assumptions not founded in the evidence or which were materially false.
           (*Id.* at 87.)
           1.   The Circuit Court operated under the false assumption that there
                was no plea agreement.
           2.   The Circuit Court operated under the incorrect assumption that the
                petitioner was a self admitted "known drug dealer." (*Id.* at 88.)
           3.   The Circuit Court operated under the incorrect assumption that the
                petitioner was a predator.

Claim P    Trial Judge acted in violation of petitioner's 14th Amendment "Due
           Process" Constitutional rights by not withholding her determination of
           guilt until sentencing as agreed. (*Id.* at 90.)

Respondent argued in his motion to dismiss that these claims are all procedurally

defaulted because the Circuit Court refused to consider Davis's claims based on *Anderson v.*

*Warden*, 281 S.E.2d 885 (Va 1981), and the fact that Davis's allegations contradicted his guilty plea colloquy. Respondent also argued other grounds for the procedural default of Claims E through P.

By Memorandum Opinion dated March 24, 2010, this Court denied Respondent's motion to dismiss because the rule in *Anderson* is not considered an adequate and independent ground for procedural default. *See Royal v. Taylor*, 188 F.3d 239, 247-48 (4th Cir. 1999); *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 490-91 (E.D. Va. 2005). The Court also rejected Respondent's other arguments as to procedural default. However, the Court recognized that Claims E through P might be procedurally barred due to the Circuit Court's application of the rule in *Slayton* on state habeas review. The Court directed Respondent to file a supplemental brief addressing the merits of Claims A through P and addressing whether the Circuit Court's application of the rule in *Slayton* serves as a procedural bar to Claims E through P.

Unfortunately, the vast majority of Respondent's supplemental brief reasserts grounds for procedural default already rejected by this Court. Respondent devotes only a few paragraphs to his argument that *Slayton* serves as a procedural bar to Claims E through P, addresses the merits of Claims A through C in less than three pages, and fails to address the merits of Claim E through P.

## II. Exhaustion and Procedural Default

State exhaustion "'is rooted in considerations of federal-state comity'" and in the Congressional determination, via federal habeas laws, "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek*, 359 F. Supp. 2d at 479 (*quoting Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n.10 (1973)). The purpose of exhaustion is "to

give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he or she can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-48 (1999). Second, "the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (*quoting Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). Furthermore, a federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1). "Because procedural default constitutes an affirmative defense in habeas cases, the burden rests with a state to prove" that an asserted procedural bar is adequate and independent. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice,

13

this Court is precluded from reviewing the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Respondent argues that Claims E through P are procedurally defaulted because, pursuant to *Slayton*, the Circuit Court dismissed those claims as raised in Davis's state habeas. *Slayton* holds that a state prisoner may not obtain state habeas relief by raising a non-jurisdictional claim of error in state habeas proceedings that he could have but did not raise at trial and on direct appeal. 205 S.E.2d at 682 ("A petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error."). Courts have held on several occasions that the *Slayton* rule generally provides an adequate bar to federal habeas review. *See, e.g., Wright v. Angelone*, 151 F.3d 151, 159-60 (4th Cir. 1998). However, "the fact that a state procedural rule is adequate in general does not answer the question of whether the rule is adequate as applied in a particular case." *Reid v. True*, 349 F.3d 788, 805 (4th Cir. 2003). "A state rule is 'adequate' if it is firmly established and regularly or consistently applied by the state court . . . ." *Brown v. Lee*, 319 F.3d 162, 169 (4th Cir. 2003) (*citing Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)). In making this adequacy determination, the courts ask "whether the particular procedural bar is applied consistently to cases that are *procedurally* analogous." *McCarver v. Lee*, 221 F.3d 583, 589 (4th Cir. 2000).

Here, Respondent does not cite any cases showing that Virginia courts have regularly and consistently applied *Slayton* to bar claims not raised on direct appeal while simultaneously granting the petitioner a belated direct appeal. Considering the procedural posture of Davis's case, Respondent has not met his burden in showing the adequacy of the *Slayton* rule, and the Court cannot find these claims procedurally defaulted. *See Jones*, 591 F.3d at 716 ("[T]he

14

burden rests with a state to prove the adequacy of the relied-on procedural bar.")  Given

Respondent's insistence on re-briefing positions and issues already rejected by this Court and his

failure to adequately demonstrate procedural default, the Court must address the merits of Claims

E through P.

### III.  Analysis

In turning to the merits, the Court first will provide a general recitation of the facts and

procedural history from Davis's Circuit Court proceedings.  More detailed facts will be included

along with the discussion of the individual claims.  Second, the Court will discuss the standard of

review and the applicable law for the three main categories of Davis's claims:  (1) ineffective

assistance of counsel; (2) prosecutorial misconduct; and, (3) due process violations based on

materially false and unreliable information used in sentencing.  Finally, the Court will group and

analyze Davis's related individual claims.  The Court notes that Davis has presented his claims in

a repetitive and unduly complicated manner.[7]  While the Court has generously construed Davis's

claims, it declines to consider questions never squarely presented by Davis.  *Beaudett v. City of

Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985) ("District judges are not mind readers.  Even in

the case of *pro se* litigants, they cannot be expected to construct full blown claims from sentence

fragments. . . .").

Having combed through the ninety-two pages of Davis's claims and having thoroughly

reviewed the record, the Court ultimately finds no merit in his claims.  Instead of showing

ineffective assistance of counsel, the record demonstrates that trial counsel, Bobby Stafford,

---

[7] The length of this opinion is not a reflection on the merit of Davis's claims, but instead reflects the repetitive and prolix manner in which Davis has presented his claims.

competently presented Davis's theory of the case and conscientiously walked the fine line of fulfilling his client's wishes without trying the Circuit Court's patience.

While Davis bases the majority of his ineffective assistance of counsel claims on sentencing errors, the Court bears the following in mind while addressing these claims: (1) Davis faced up to eighty years of imprisonment on these charges; (2) the discretionary guideline range recommended between five years and four months to eight years and nine months for each charge; and, (3) the Circuit Court sentenced Davis to an active term of five years and four months on each count to run concurrently. Considering this record, Davis simply cannot demonstrate prejudice from any sentencing errors. Additionally, none of the challenged statements made by the Commonwealth's Attorney rise to the level of prosecutorial misconduct. Finally, the record reflects that Davis received due process and had a full and fair opportunity to present his case as to sentencing.

## A.    **Facts and Procedural History**

In addressing Davis's state habeas petition, the Circuit Court made the following findings of fact:

- On December 15, 2003, the Fairfax County grand jury rendered two indictments: (1) Davis feloniously distributed cocaine, or an isomer thereof, on March 26, 2003 and (2) Davis feloniously distributed cocaine, or an isomer thereof, on May 20, 2003.

  . . . .

- On July 14, 2004, Davi[s] executed a *Plea of Guilty To A Felony* form in each case, where he indicated, among other things, that:

  – He was satisfied with the services of Mr. Stafford.

16

- He had discussed the charge with his attorney and understood it, he had had ample time to do so and his attorney had advised him of any possible defenses that he might have.

- He understood that each charge carried a minimum sentence of 5 years, a 40 year maximum and a fine of up to $500,000.

- He understood that if he pled guilty to more than one offense the judge could order them to run consecutively.

  . . . .

- There was no plea agreement in the case.

- No government agent had promised him a lighter sentence or probation if he pled guilty and no one had threatened or otherwise caused him to plead guilty.

- "After having discussed the matter with [h]is attorney, [Davis] freely and voluntarily ple[d] guilty to . . . **Distribution of Cocaine** . . . and waive[d] [his] right to a trial by jury and request[ed] the Court to hear all matters of law and fact."

. . . .

• The judge orally questioned Davis concerning the voluntariness of his plea. Among other things, the petitioner indicated that he was thirty-eight years old, had completed three years of college and was a partner in a business consulting firm. The defense asked the judge to withhold making a final finding of guilty until sentencing, so she could hear all the circumstances. The Court then determined from Davis that he was voluntarily pleading guilty and that he was satisfied with the services of Mr. Stafford.

• The prosecutor then summarized the Commonwealth's evidence vis-à-vis the two charges, *i.e.*, that Davis had sold 111 grams of cocaine to undercover Detective Steve Carroll on March 26 and had sold another 118 grams of cocaine to Carroll on May 20, 2003.

. . . .

• The judge found Davi[s] guilty as charged and set the matter over for preparation of a presentence report and sentencing on September 3, 2004. . . .

17

- The sentencing was continued on the Commonwealth's request to October 1, 2004 and on [Davis's] request to November 5, 2004 and then again to December 17, 2004. Sentencing was continued, at least in part, to allow the Defendant to prepare a final offender's version of the crime.

- On December 17, 2004, the Court held the sentencing hearing. . . . The Presentence Report, without objection, was accepted by the judge, including "two different versions of the defendant's version that have been added to the PSI that was originally filed." The Sentencing Guidelines recommended a composite sentence range of 5 years 4 months to 8 years 9 months, with a range midpoint of 7 years and 2 months to serve.

- The defense called Davis' mother, Yvonne Bracey, and Dr. Simone Digiovanni, a Georgetown University neurologist who knew Davis.[8]

- [Davis] himself then testified as to his version of the events *i.e.*, that "Tony," a paid Fairfax County informant, supposedly threatened him into making the two Fairfax drug distributions.

- The Commonwealth called Detective Carroll, who testified about the two drug deals where he, acting undercover, had brought [sic] the cocaine from Davis on March 26 and May 20, 2003.

- Before sentencing the petitioner, the judge allowed Davis to read an eight minute statement he had written. Davis started off by admitting:

> On March 26th and May 20th of 2003 I entered vehicles at the Skyline Mall parking lot and transferred what I was told to be a total of eight ounces of cocaine to Detective Carroll. I fully admit that this occurred and pled guilty accordingly.
>
> . . . .

- The Court stated that she had read Davis' statement very carefully, but was impressed by Detective Carroll's testimony which revealed a very different type person. She concluded Davi[s] knew exactly what he was doing, but nevertheless decided to give him the "low end of the guidelines."

---

[8] At a prior sentencing hearing, the defense also called Dr. Ksenija Gorni and Jamil Jerome, both close friends of Davis.

18

- Davis thus was sentenced to 10 years for each Fairfax offense, to run consecutively with his Arlington sentence but concurrently with each other. The Court then suspended 4 years and 8 months of each sentence, leaving Davis an aggregate Fairfax sentence to serv[e] of 5 years and 4 months for the two felonies.

State Hab. Op. 3-7 (internal citations omitted).

## B.   Applicable Law

### 1.   Standard of Review

This Court's power to grant relief by way of a writ of habeas corpus is circumscribed by

28 U.S.C. §§ 2254(d) and 2254(e)(1). Under Section 2254(e)(1), "a determination of a factual

issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). A

petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing

evidence." *Id.* Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus

based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" clearly established law "if the state court

applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it

decides a case differently than [the Supreme Court] has done on a set of materially

indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694 (2002) (*citing Williams v. Taylor,* 529

U.S. 362, 405-06 (2000)). A decision is an "unreasonable application" of Supreme Court law "if

the state court correctly identifies the governing legal principle . . . but unreasonably applies it to

the facts of the particular case." *Id.* at 694 (*citing Williams*, 529 U.S. at 407-08).  Demonstrating

that a state court's decision is unreasonable requires overcoming "a substantially higher

threshold" than simply demonstrating error. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)

(*citing Williams*, 529 U.S. at 410).[9]  Additionally, "when assessing the reasonableness of the state

court's application of federal law, the federal courts are to review the result that the state court

reached, not whether [its decision] [was] well reasoned." *Larry v. Branker*, 552 F.3d 356, 365

(4th Cir. 2009) (alterations in original; internal quotations omitted).

### 2.   Ineffective Assistance of Counsel

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court held that to

demonstrate the ineffective assistance of counsel, a defendant first must show that counsel's

representation was deficient and, then, must establish that the deficient performance prejudiced

the defense. *See id.* at 687.  To satisfy the deficient performance facet of *Strickland*, the

defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall

'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d

577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689).  Prejudice requires a defendant to

"show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  In analyzing

ineffective assistance of counsel claims, it is not necessary to "determine whether counsel's

performance was deficient before examining the prejudice" issue. *Id.* at 697.

---

[9] In light of the foregoing statutory structure, the findings made by the state courts figure
prominently in this Court's opinion.

In the context of a guilty plea, the Supreme Court has modified the prejudice prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Although this inquiry focuses on a subjective question, "the answer to that question must be reached through an objective analysis." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). In conducting this inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (*citing Blackledge*, 431 U.S. at 74-75; *Little v. Allsbrook*, 731 F.2d 238, 239-40 n.2 (4th Cir. 1984)).[10]

### 3.    Prosecutorial Misconduct

To establish a prosecutorial misconduct claim, a petitioner must show:  (1) that the prosecutor's remarks were improper, and (2) that they "prejudicially affected the [petitioner's]

---

[10] Two recent and factually distinguishable decisions by the Supreme Court of the United States discussing the Sixth Amendment right to counsel during the plea-bargaining process do not alter the Court's analysis. *See Lafler v. Cooper*, __ S. Ct. __, No. 10-209, 2012 WL 932019 (Mar. 21, 2012); *Missouri v. Frye*, __ S. Ct. __, No. 10-444, 2012 WL 932020 (Mar. 21, 2012). These cases address instances where "inadequate assistance of counsel caused nonacceptance of a plea offer and further proceedings led to a less favorable outcome." *Lafler*, 2012 WL 932019, at *3. The Supreme Court made clear that these cases do not alter the *Hill* analysis for cases "where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial." *Frye*, 2012 WL 932020, at *9. Further, they do not lift the formidable barrier applicable to claims which contradict prior representations made under oath.

21

substantial rights as to deprive him of a fair trial." *United States v. Jones*, 471 F.3d 535, 542 (4th

Cir. 2006). Courts consider numerous factors in determining the prejudicial effect of an

improper comment, including:

> (1) the degree to which the remarks tended to mislead the jury or prejudice the accused; (2) whether the remarks were isolated or extensive; (3) the strength of the evidence supporting guilt in the absence of the remarks; (4) whether the comments were deliberately placed in front of the jury to divert attention to extraneous matters; (5) whether the remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury.

*Id.* at 542 n.2 (*citing United States v. Wilson*, 135 F.3d 291, 299 (4th Cir. 1998)).

### 4. Due Process Claim Based on Materially False or Unreliable Information

The imposition of a sentence based on materially false or unreliable information violates

due process. *United States v. Lee*, 540 F.2d 1205, 1211 (4th Cir. 1976); *Townsend v. Burke*, 334

U.S. 736, 740 (1948). However, "[t]o obtain post-judgment relief on due process grounds, the

[petitioner] bears the burden of showing that the information is false or unreliable and that the

sentencing judge relied on it." *United States v. Watson*, No. 92-6763, 1993 WL 425128, at *2

(4th Cir. Oct. 21, 1993) (*citing United States v. Rachels*, 820 F.2d 325, 327-28 (9th Cir. 1987);

*United States v. Tooker*, 747 F.2d 975, 978 (5th Cir. 1984), *cert. denied*, 471 U.S. 1021 (1985);

*United States v. Emanuel*, 869 F.2d 795, 796 (4th Cir. 1989)).

### C. Analysis of Individual Claims

#### 1. Claim A.1: Ineffective Assistance of Counsel Based on Trial Counsel's Inadequate Pre-Trial Investigation

In Claim A.1, Davis argues ineffective assistance of counsel based on: (1) Stafford's

failure to seek independent analysis of the drug evidence, request information on Tony, the

22

confidential informant, and analyze relevant police reports and videos; (2) Stafford's failure to

interview material and exculpatory witnesses; and, (3) Stafford's failure to hire a mental expert to

evaluate Davis and testify that his actions were consistent with duress or diminished capacity.

Davis contends he would not have pled guilty and would have opted for trial had Stafford

performed an adequate pre-trial investigation.

In ruling on the merits of this claim, the Circuit Court found the claim "too conclusory to

state a cognizable claim[] of ineffective counsel, especially with respect to the required showing

of actual prejudice." State Hab. Op. 9. The Court cannot find that this decision involved an

unreasonable application of the law or an unreasonable determination of the facts. *See* 28 U.S.C.

§ 2254(d). Indeed, Davis fails to explain what an adequate analysis of the Commonwealth's

evidence would have revealed, fails to name witnesses Stafford should have interviewed and/or

what specific information these witnesses possessed,[11] and fails to identify a mental expert

Stafford should have hired and/or proffer what that mental expert would have said if he had been

---

[11] In his federal habeas petition, Davis specifically identifies one individual, Ronna Fleischman, and details what information she possessed and would have testified to if called as a witness. However, Davis did not present this same information in his state habeas petition. While the state habeas record contains a letter from Fleischman, this letter does not proffer what her testimony would have been, but instead generally states that she "had information that would be favorable to [Davis's] defense." Ronna Fleischman Aff., Opp'n to Mot. Dismiss & Reply Supp. Pet. Habeas Relief, *Davis v. Johnson*, No. CL-2006-395 (Va. Cir. Ct. filed May 15, 2006). Considering the constraints of § 22254(d)(1) review, the Court cannot consider Davis's proffer as to what Fleischman would have said. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) ("It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

called to testify. Davis's conclusory allegations insufficiently demonstrate deficient performance

or prejudice under *Strickland*. *See Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990).[12]

### 2. Claim A.2: Ineffective Assistance of Counsel Based on Trial Counsel's Failure to Disclose Closed Head Injury

In Claim A.2, Davis alleges that Stafford failed to disclose that he had previously

"suffered a closed head injury that affected [his] memory, concentration, and overall brain

function." (Pet. Ex. 2, at 1.) Davis contends he would not have hired Stafford had he known

about the injury and that Davis only learned about this injury after his guilty plea. (*Id.* at 1-2.)

Davis's voluntary and intelligent guilty plea forecloses federal collateral review of this

claim. *See Lemaster*, 403 F.3d at 221; *Slavek*, 359 F. Supp. 2d at 480. At his plea hearing, Davis

told the Circuit Court that he was entirely satisfied with the services of Stafford and expressed no

concerns with Stafford's performance, including his memory or ability to concentrate. Given the

statements made by Davis during his plea hearing, he cannot now complain of pre-guilty plea

constitutional deprivations, even if allegedly caused by an injury discovered after his guilty plea.

Regardless, Davis fails to articulate how counsel's allegedly inadequate memory or inability to

concentrate specifically impacted Davis's guilty plea or sentencing and has failed to demonstrate

deficient performance or prejudice under *Strickland*.

---

[12] Additionally, Davis told the Circuit Court during his plea colloquy that he was entirely satisfied with the services of Stafford. Davis's voluntary and intelligent guilty plea forecloses federal collateral review of this claim. *See United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005); *Slavek*, 359 F. Supp. 2d at 480.

3.      **Claims A.3 and B.1:  Ineffective Assistance of Counsel Based on Trial Counsel's Failure to Investigate and Advise Davis on Available Defenses**

In Claims A.3 and B.1, Davis alleges that Stafford failed to adequately investigate and advise Davis on available defenses which resulted in Davis pleading guilty instead of insisting upon going to trial.  Specifically, Davis contends:

> Mr. Stafford initially told [Davis] that based on [Davis's] account of the events leading up to [his] arrest; Mr. Stafford believed that [Davis] had a strong case for "entrapment" and or "duress and diminished capacity." Mr. Stafford told [Davis] that a final determination as to a defense would be made after a thorough examination of the evidence by Mr. Stafford. Mr. Stafford later informed [Davis] that, after Mr. Stafford's further analysis, there were no defenses available to [Davis] under Virginia law . . . . Mr. Stafford did not thoroughly investigate the facts surrounding the charges and possible defenses . . . .

(Pet. Ex. 2, at 2.) Far from demonstrating ineffective assistance of counsel, Davis's allegations instead reflect that, while Stafford originally thought some defenses might be available, he competently advised Davis after research that these defenses were not available and/or would not be successful.

a.      **Diminished Capacity**

Aside from the fact that the record does not contain any evidence suggesting Davis suffered from diminished capacity, Virginia law does not recognize the defense of diminished capacity. *Stamper v. Commonwealth*, 324 S.E.2d 682, 688 (Va. 1985) ("[W]e hold that evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt."); *Peeples v. Commonwealth*, 519 S.E.2d 382, 386 (Va. Ct. App. 1999) ("[T]he Supreme Court of Virginia clearly rejected diminished capacity as a defense in Virginia.") (Lemons, J., concurring).  Thus, Davis cannot demonstrate deficient

performance or prejudice based on Stafford's advice that diminished capacity could not serve as a defense.

### b.    Duress

Under Virginia law, "[d]uress excuses criminal behavior 'where the defendant shows that the acts were the product of threats inducing a reasonable fear of immediate death or serious bodily injury.'" *Arnold v. Commonwealth*, 560 S.E.2d 915, 918 (Va. Ct. App. 2002) (*quoting Graham v. Commonwealth*, 525 S.E.2d 567, 573 (Va. Ct. App. 2000)). A defendant asserting the defense of duress must show that: (1) the threat was specifically directed toward causing him to commit the crime charged; and, (2) that he reasonably believed that participation in the crime was the only way to avoid the threatened harm. *Graham*, 525 S.E.2d at 573. Vague threats of future harm do not sufficiently excuse criminal conduct, *Pancoast v. Commonwealth*, 340 S.E.2d 833, 836 (Va. Ct. App. 1986), and a defendant may not rely on duress as a defense if he failed to take advantage of a reasonable opportunity to avoid doing the criminal acts without being harmed. *Graham*, 525 S.E.2d at 573.

According to Davis's version of events leading up to the drug sales at issue, a mutual friend introduced Davis to Tony two weeks after Davis had been charged in Arlington for distribution of ecstasy. When Tony inquired about purchasing drugs, Davis promised Tony he would set up drug transactions hoping to turn Tony over to the Arlington Police in exchange for a reduced sentence on the Arlington charge. Unbeknownst to Davis, Tony worked as a confidential informant for the Fairfax County Police. According to Davis, Tony constantly called Davis, leaving threatening messages inquiring about the promised drug deals. Tony's threats would ebb and flow, but Tony "made it extremely clear that things would get bad, that things

26

could progress to a negative point to where [Davis] could be physically harmed" if he did not arrange the drug deals. Dec. 17, 2004 Sentencing Hr'g Tr. 30:8-10. On one occasion, Tony came to Davis's house, took Davis on a car ride with Davis trapped in the back seat, and told Davis that he could shoot him right there. Davis never reported Tony's actions or threats to the police. Davis contends he only completed the two drug deals because Tony threatened him with bodily harm.

Davis's version of events demonstrates that he engaged in two drug transactions largely in response to vague threats of future harm and without taking advantage of reasonable opportunities to avoid doing the criminal acts without being harmed, such as contacting the police about Tony's threats. Under these facts and given the strength of the Commonwealth's evidence undermining Davis's story,[13] Stafford's determination after further investigation that duress was not a viable defense did not constitute deficient performance and did not prejudice Davis. *See Graham*, 525 S.E.2d at 573; *Pancoast*, 340 S.E.2d at 836.

### c.   Entrapment

"Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." *Stamper*, 324 S.E.2d at 687 (internal quotations omitted). Entrapment occurs when criminal conduct of an accused results from "'creative activity' [by police] that implants in the mind of an otherwise innocent person the disposition to commit an

---

[13] For example, according to the Commonwealth's evidence, Davis made the following comments as he was being placed under arrest: "One of these days I'm going to learn to respect my gut feeling. . . . Thank God for small miracles. This isn't as bad as it could have been. Yeah. It could have been two F-ing kilos." July 14, 2004 Plea Hr'g Tr. ("Plea Hr'g Tr.") 16:2-6. These statements cannot be reconciled with Davis's duress defense.

27

offense and induces its commission in order to prosecute." *Id.* (*quoting Johnson v. Commonwealth*, 180 S.E.2d 661, 663 (Va. 1971)). However, "[t]here is nothing improper in the use, by the police, of decoys, undercover agents, and informers to invite the exposure of willing criminals and to present an opportunity to one willing to commit a crime." *Pannell v. Commonwealth*, 384 S.E.2d 344, 346 (Va. Ct. App. 1989) (alteration in original). "Encouragement or solicitation of the commission of a crime by one who is willing and predisposed to commit the crime does not constitute entrapment." *McCoy v. Commonwealth*, 385 S.E.2d 628, 630 (Va. Ct. App. 1989). Moreover, "[r]eluctance to engage in crime is not transformed into entrapment whenever a person hesitantly, but willingly, acquiesces in the request of a close ally to commit a crime." *Id.*

As described above, Davis contends he initially promised Tony he would set up drug transactions in the hopes of mitigating his sentence in Arlington and then only went through with those drug deals due to Tony's continuously threatening behavior. The Court could find Davis's story so palpably incredible as to warrant summary dismissal of this claim.[14] *Lemaster*, 403 F.3d at 220-21; *Raines v. United States*, 423 F.2d 526, 531 (4th Cir. 1970). Regardless, Davis's own version of events undermines any viable entrapment defense. At the time of the two drug

---

[14] For instance, in addition to the unreported threats that Davis contends propelled him to act, Davis states that the drugs he distributed in the two transactions were supplied by Jay Hernandez, a friend who was a sniper for the Secret Service. The comments made by the Circuit Court reflect that the sentencing judge did not credit Davis's testimony. *See, e.g.*, Dec. 17, 2004 Sentencing Hr'g Tr. 45:17-23 ("THE COURT: He's an army ranger working with the Secret Service just selling drugs on the side just for the fun of it? Oh, it was – [DAVIS]: Ma'am, not for the fun of it. THE COURT: It was his wedding. [DAVIS]: Yes. THE COURT: Oh God, that explains it all."), 94:20-95:3 ("THE COURT: You know, I read your long statement very carefully trying to figure out what happened, and I must say that I ended up being very impressed with Detective Carroll's testimony because he shed a different light on this thing and he described a man who was very savvy about drug deals and who knew what he was doing.").

transactions at issue, Davis had already been charged with distribution of ecstasy in Arlington, and Davis admits he previously had traded drugs for business. If Davis had pursued an entrapment defense, the Commonwealth would have been entitled to present this evidence to demonstrate Davis's predisposition toward drug dealing. Further, Davis admits he initially agreed to set up drug deals. Davis's later reluctance and hesitation offer a weak support for an entrapment defense.

Given these facts, Stafford reasonably perceived and advised Davis that entrapment was not a viable defense and counseled Davis as to the benefits of a guilty plea versus going to trial in the absence of viable defenses. Davis has failed to overcome the "strong presumption" that Stafford's conduct fell within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Further, even were the Court to assume Davis could show deficient performance, Davis has failed to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Davis's allegations otherwise rely on mere theoretical possibilities rather than reasonable probabilities. *See Richardson v. Branker*, 668 F.3d 128, 140 (4th Cir. 2012) ("'[T]he likelihood of a different result must be *substantial*, not just conceivable.'" (*quoting Harrington v. Richter*, 131 S. Ct. 770, 792 (2011))); *Chambers v. Sec'y Penn. Dep't of Corr.*, 442 F. App'x 650, 657 (3d Cir. 2011) ("An argument that 'rests almost entirely upon mays and could haves' does not satisfy the requirements for habeas relief." (*quoting Rice v. Hall*, 564 F.3d 523, 526 (1st Cir. 2009))).

### 4. Claim B.2: Ineffective Assistance of Counsel Based on Trial Counsel's Misrepresentations as to Sentencing

In Claim B.2, Davis contends Stafford told Davis that a guilty verdict after a trial would result in a minimum sentence of ten years, but if Davis pled guilty the Commonwealth would agree to a two-year sentence of imprisonment and the guidelines would not be used to determine Davis's sentence. Davis states he would not have pled guilty but for these misrepresentations.

During Davis's plea hearing, the Circuit Court stated that no plea agreement existed between Davis and the Commonwealth. Davis confirmed that no one had made any promises to him concerning his plea. Davis acknowledged that he could be sentenced to any term between five to forty years for each offense and that any terms of imprisonment could be consecutive. Davis signed the plea forms, acknowledging that the minimum term of imprisonment for each offense was five years with a maximum term of forty years. Plea of Guilty to a Felony, *Commonwealth v. Davis*, No. FE-2003-104502 (Va. Cir. Ct. filed July 14, 2004); Plea of Guilty to a Felony, *Commonwealth v. Davis*, No. FE-2003-104609 (Va. Cir. Ct. filed July 14, 2004). Davis also confirmed that Stafford had gone over the guidelines with him and that he understood the guidelines only served as recommendations that the sentencing judge did not have to follow. Thus, any misinformation Davis may have received from Stafford was corrected by the Circuit Court during the plea colloquy, and Davis's voluntary and intelligent guilty plea forecloses federal collateral review of this claim. *See Lemaster*, 403 F.3d at 221; *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995); *Slavek*, 359 F. Supp. 2d at 480.

30

### 5.    Claims B.3, C.6, and P:  The Circuit Court's Failure to Defer a Finding of Guilt Until Sentencing

In Claims B.3 and C.6, Davis claims ineffective assistance of counsel based on Stafford's misrepresentations regarding the nature of his plea and failure to challenge the Circuit Court's violation of Davis's plea agreement.  Specifically, Davis states that Stafford informed him the Circuit Court would defer any finding of guilt until Davis had the opportunity to present evidence of accommodation at sentencing.  Stafford allegedly told Davis that his guilty plea could be withdrawn if the sentencing judge rejected the theory of accommodation.  In Claim P, Davis contends that the Circuit Court violated his due process rights in failing to withhold making a finding of guilt as agreed upon in his plea.

The plea forms signed by Davis contained the following paragraphs relevant to these claims:

> 7.    The following plea agreement is submitted:  **None.**
>
> 8.    I understand that the Court may accept or reject the agreement, and may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the pre-sentence report and other evidence.

Plea of Guilty to a Felony, *Commonwealth v. Davis*, No. FE-2003-104502 (Va. Cir. Ct. filed July 14, 2004); Plea of Guilty to a Felony, *Commonwealth v. Davis*, No. FE-2003-104609 (Va. Cir. Ct. filed July 14, 2004).  During Davis's plea hearing, the following conversation occurred relating to these paragraphs of the plea forms:

> THE COURT:  Have you discussed with your lawyer whether you should plead guilty or not guilty?
> THE DEFENDANT:  Yes, I have.
> THE COURT:  After this discussion did you decide for yourself that you should plead guilty?
> THE DEFENDANT:  With the provisions in number 8, yes.

31

> MR. STAFFORD: What he's saying, Your Honor, is the provision in number 8, he will have a lot to show, compelling reasons at the time of sentencing, but he pleads guilty to this offense.
> THE COURT: Well, there isn't any plea agreement in the case.
> MR. STAFFORD: No. There's provision under the plea agreement – not agreement, but the plea form there under paragraph 8. I think that's what it says. We'd ask the Court to withhold ultimate determination of guilt until the sentencing because there's a lot of circumstances he wants to bring to the Court's attention.
> THE DEFENDANT: That's correct, Your Honor.
> THE COURT: Okay. Are you entering your plea freely and voluntarily?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Are you entering a plea of guilty because you are in fact guilty of the crime charged?
> THE DEFENDANT: Yes, ma'am.

Plea Hr'g Tr. 6:11-7:13. The Circuit Court then found his "pleas of guilty to be freely,

intelligently and voluntarily made" and found Davis guilty as charged. Plea Hr'g Tr. 10:16-18.

The Court can find no factual merit in Davis's contention that the Circuit Court violated

his due process rights by breaching an agreement to defer a finding of guilt or in his claim that

Stafford was ineffective by not objecting to the Circuit Court's breach. In considering whether

Davis misunderstood Paragraph 8 of the plea forms, the Court of Appeals of Virginia made the

following findings on direct appeal:

> The transcript of the plea colloquy does not show that [Davis] misunderstood Paragraph 8. The statements by [Davis] and his attorney do not establish that they believed the plea forms *required* the trial judge to withhold a determination of guilt until sentencing. [Davis's] statement and his attorney's statements indicate only their beliefs that the trial judge could withhold that determination if she had chosen to do so.

*Davis v. Commonwealth*, No. 3177-06-4, at 2 (Va. Ct. App. July 6, 2007). Davis fails to present

clear and convincing evidence that would rebut the presumption of correctness afforded to the

state court's factual findings. *See* 28 U.S.C. § 2254(e)(1). Because the plea forms did not

32

require the trial judge to withhold a determination of guilt until sentencing, Claims C.6 and P have no merit.

As for Davis's claim that Stafford misinformed him that the Circuit Court would defer any finding of guilt and that any plea could be withdrawn if the Circuit Court declined to find accommodation, the state habeas court rejected this claim as "too conclusory to state a cognizable claim[] of ineffective counsel, especially with respect to the required showing of actual prejudice." State Hab. Op. 9. Given the strength of the evidence against Davis and his failure to muster any viable defense, the Court cannot find that this decision involved an unreasonable application of the law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Davis has yet to produce any evidence showing a reasonable probability that he would have refused to plead guilty and insisted on going to trial absent a guarantee that any finding of guilt would be withheld pending sentencing. *See Hill*, 474 U.S. at 59.

Further, any misinformation Davis may have received from Stafford appears to have been corrected by the Circuit Court during the plea colloquy and by the plea forms signed by Davis, thus foreclosing Davis's ability to raise this claim. *See Lemaster*, 403 F.3d at 221; *Foster*, 68 F.3d at 88; *Slavek*, 359 F. Supp. 2d at 480. During Davis's plea hearing, the Circuit Court stated that no plea agreement existed between Davis and the Commonwealth, and Davis confirmed that no one had made any promises to him concerning his plea. The plea hearing transcript and the plea forms reflect that only the Circuit Court reserved the right to defer a finding of guilt and that Davis did not reserve any right to himself, including a right to withdraw his plea and go to trial. At best the record reflects a unilateral hope between Stafford and Davis that the sentencing judge might later reduce his conviction and sentence to reflect accommodation.

33

###### 6.    Claims C.1, C.2, E, O.1:  Breach of Plea Agreement as to Sentencing

In Claims C.1 and C.2, Davis asserts ineffective assistance of counsel based on Stafford's

failure to challenge the Circuit Court's statement that no plea agreement existed and failure to

challenge the Circuit Court's and the Commonwealth's breach of the plea agreement.  In Claims

E and O.1, Davis contends that the Commonwealth's Attorney and the Circuit Court violated his

due process rights by breaching the plea agreement.

The plea forms signed by Davis contained the following paragraphs relevant to these

claims:

4.    My attorney has advised me that the punishment which the law provides is as follows: **A maximum of 40 (Forty) years imprisonment (and not less than 5 (Five) years imprisonment), and a fine in an amount not more than $500,000;** also that probation may or may not be granted; and that if I plead guilty to more than one offense, the Court may order the sentences to be served consecutively, that is, one after the other.

4a.    I understand that if the Court sentences me to a term of incarceration, it shall impose an additional term of not less than six months nor more than three years, all of which shall be suspended, conditioned upon successful completion of a period of post release supervision.

. . . .

7.    The following plea agreement is submitted: **None.**

Plea of Guilty to a Felony, *Commonwealth v. Davis*, No. FE-2003-104502 (Va. Cir. Ct. filed July

14, 2004); Plea of Guilty to a Felony, *Commonwealth v. Davis*, No. FE-2003-104609 (Va. Cir.

Ct. filed July 14, 2004).  Relying on Paragraph 4a of the plea forms, Davis contends that a plea

agreement existed, specifying limits to potential sentences Davis could receive.  Davis argues

that under the agreement the Circuit Court could not impose more than three years of a

suspended sentence which would expire upon the successful completion of post release

supervision. Because the Circuit Court imposed a ten-year term of incarceration with four years and eight months suspended for a period of twenty years, Davis asserts a breach of the plea agreement.

The Court finds no factual merit in these claims. First, the plea hearing transcript and the plea forms clearly show that Davis pled guilty without any plea agreement as to sentencing. Second, Paragraph 4a does not place any restrictions on the term of incarceration that a sentencing judge may impose, including how much of that term may be suspended. Instead, Paragraph 4 limits the punishment, including the term of incarceration, that may be imposed, and Paragraph 4a requires an *additional term* of post release supervision which must follow any term of active incarceration as mandated by statute.[15] Because no breach occurred when the Circuit Court suspended four years and eight months of Davis's term of incarceration for a period of twenty years, the due process and ineffective assistance of counsel claims relating to this alleged breach must fail.

---

[15] This statute provides:

> For any felony offense committed (i) on or after January 1, 1995, the court may, and (ii) on or after July 1, 2000, shall . . . impose an additional term of not less than six months nor more than three years, which shall be suspended conditioned upon successful completion of a period of post-release supervision . . . . However, such additional term may only be imposed when the sentence includes an active term of incarceration in a correctional facility.

Va. Code § 18.2-10.

**7.    Claim C.3:  Ineffective Assistance of Counsel Based on Stafford's Failure to Object to, Correct, or Refute the Possible Chain of Custody Issues with the Drug Evidence**

In Claim C.3, Davis alleges that he told Stafford that the drug evidence presented "was not the same as the drug evidence seized" from Davis and that Stafford's failure to challenge this questionable evidence constituted ineffective assistance of counsel. (Pet. Ex. 2, at 11.) The state habeas court rejected this claim as "too conclusory to state a cognizable claim[] of ineffective counsel, especially with respect to the required showing of actual prejudice." State Hab. Op. 9. The Court cannot find that this decision involved an unreasonable application of the law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Indeed, Davis fails to detail the alleged discrepancies between the drug evidence presented and the drug evidence seized, and he has yet to advance a valid argument as to how counsel could have challenged the drug evidence. Davis's conclusory allegations insufficiently demonstrate deficient performance or prejudice under *Strickland*. *See Bassette*, 915 F.2d at 940-41.

**8.    Claims C.4, C.28, F.9, G, H.9:  "Spontaneous Statements" Used Against Davis**

In Claims C.4 and C.28, Davis asserts ineffective assistance of counsel based on Stafford's failure to object to the Commonwealth's use of "spontaneous statements" made by Davis. (Pet. Ex. 2, at 11-14, 44-45.) In Claims F.9, G, and H.9, Davis contends that the Commonwealth's use of these statements violated the Fifth Amendment,[16] the Confrontation Clause,[17] and due process.

---

[16] The Fifth Amendment provides in relevant part: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V.

[17] The Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI.

36

Davis chose to testify during his sentencing hearing, and during cross-examination, the

Commonwealth's Attorney and Davis engaged in the following exchange:

> Q    Did you read the official version of the presentence report in this case?
> A    Yes, I read what was written, yes, sir.
> Q    Part of that says . . . Among other things, he – and that's referring to
> you . . . at the time of your arrest . . . . "he stated, quote, this isn't as bad as it could
> have been. Yeah, it could have been two f[***]ing kilos." Did you say that?
> A    The timeline is wrong. . . . I did say that, but it was at the [police]
> substation.

Dec. 17, 2004 Sentencing Hr'g Tr. 36:16-37:6. After Davis testified, the Commonwealth called

Steven Carroll, a detective with the Fairfax County Police, as a rebuttal witness. Detective

Carroll testified to the following:

> Q    Among the things you heard when the arrest team approached, did you
> hear [Davis] say, "I'm f[***]ed; at least it wasn't the two kilos"?
> A    I specifically heard, "I'm f[***]ed." I didn't hear the last part.
> Another Detective heard that.

Dec. 17, 2004 Sentencing Hr'g Tr. 62:8-12.

Davis first argues that the police obtained these statements prior to advising Davis of his

*Miranda*[18] rights in violation of the Fifth Amendment. However, *Miranda* warnings must be

given only when a person is being interrogated by law enforcement officers after being taken into

custody. *Stansbury v. California*, 511 U.S. 318, 322 (1994). Statements volunteered by a

defendant, even while in custody, are not implicated by *Miranda*. *Rhode Island v. Innis*, 446

U.S. 291, 300 (1980) ("Volunteered statements of any kind are not barred by the Fifth

Amendment . . . ."). Although Davis contends he made these statements prior to being advised

of his *Miranda* rights, nothing in the record suggests that these statements were anything but

---

[18] *Miranda v. Arizona*, 384 U.S. 436 (1966).

voluntary, and Davis never claims he made these statements in response to police interrogation. Indeed, the impulsive nature of the statements themselves suggests they were freely given. Ultimately, Davis has failed to show any due process or Fifth Amendment violation and has failed to demonstrate ineffective assistance of counsel based on Stafford's failure to assert a Fifth Amendment challenge.

Next, Davis asserts a violation of the Confrontation Clause because another detective heard the phrase "at least it wasn't the two kilos" and that detective was unavailable for cross-examination. Even assuming the Confrontation Clause applies at sentencing[19] and a violation of Davis's Confrontation Clause rights exists, no entitlement to relief necessarily follows. First, Davis has failed to demonstrate ineffective assistance of counsel based on Stafford's failure to object. The statement heard by this absent detective had already come into evidence through Davis. Stafford reasonably abstained from objecting because Davis had nothing to gain from the exclusion of this second iteration of the same evidence. Further, Davis cannot show prejudice resulting from Stafford's failure to object because Davis had already admitted to making the statement.

Second, any due process or Confrontation Clause violation caused by the admission of this evidence constituted harmless error. Constitutional "error does not automatically entitle a petitioner to a grant of a writ of habeas corpus. Instead, a habeas court reviews such error for harmlessness." *Wiggins v. Boyette*, 635 F.3d 116, 121 (4th Cir. 2011). "[I]n determining the

---

[19] The United States Court of Appeals for the Fourth Circuit has recognized that "[i]t is far from clear that the Confrontation Clause applies to [even] a capital sentencing proceeding." *United States v. Higgs*, 353 F.3d 281, 324 (4th Cir. 2003); *see also Harper v. Commonwealth*, 675 S.E.2d 841, 842 (Va. Ct. App. 2009) (holding that the Confrontation Clause does not apply to sentencing proceedings).

38

harmlessness of a . . . constitutional error in a criminal trial, a federal habeas court asks whether the error had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). "If a court finds itself in 'grave doubt' about whether a trial error is harmless, it must grant habeas relief. . . . If a court finds itself without any grave doubt as to the harmlessness of error, it must deny habeas relief."[20] *Id.* (*quoting O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).  Because Davis had already admitted to making the statement, any constitutional violation caused by the admission of this evidence no doubt constituted harmless error.

### 9. Claims C.5 and M.2: Sentence Based on Improper Drug Weight

In these claims, Davis contends that the Circuit Court calculated his sentence based on an inaccurate and unreliable drug weight in violation of his due process rights and that Stafford's failure to challenge the drug weight constituted ineffective assistance of counsel.  Specifically, Davis argues that he sold what he believed to be four ounces of cocaine on two different occasions, resulting in a total of eight ounces, or 226.8 grams, of cocaine.  Even though the lab reports show that Davis sold approximately 229 grams of cocaine, Davis argues that because he only intended to sell eight ounces of cocaine "any amount in excess of 226.8 grams would not be part of the 'sale' but in essence, a free gift, since no additional consideration was alleged to have been given to or received by [Davis]."  (Pet. Ex. 2, at 15, 84.)  Davis contends that "[i]t is probable that the [sentencing] guideline range would have been different" if based on 226.8 grams of cocaine instead of 229 grams.  (*Id.*)

---

[20] "A 'grave doubt' exists when 'in the judge's mind, the matter is so evenly balanced that he [or she] feels . . . in virtual equipoise as to the harmlessness of the error.'"  *Wiggins*, 635 F.3d at 121 (*quoting O'Neal*, 513 U.S. at 435) (alterations in original).

Davis's ineffective assistance of counsel claim based on these facts must fail. The record reflects that Stafford briefly raised this argument and that the Circuit Court considered this argument and how it would impact the discretionary sentencing guidelines:

> THE COURT: It's a minor point, isn't it?
> MR. STAFFORD: Okay.
> THE COURT: No. But, I mean, isn't – isn't it about more or less the – even according to his weight, more or less the right weight?
> MR. STAFFORD: Well, I think that the amount has to do with the guidelines and . . . how the guidelines are weighted against him –
> THE COURT: Oh. Really? I can't vary the amount for purposes of the guidelines if we have lab sheets.

Oct. 1, 2004 Sentencing Hr'g Tr. 7:2-16. Based on the Circuit Court's response, Stafford decided not to further press the issue, and based on the record, the Court cannot categorize this decision as objectively unreasonable. Regardless, Davis fails to show a reasonable probability that further argument on this issue would have resulted in a different sentence. Instead, Davis merely speculates that this 2.2 gram difference in drug weight would have resulted in a lower, discretionary sentencing guideline range.

Davis's due process claim also fails because he has not demonstrated that the Circuit Court relied on materially false or unreliable information in arriving at his sentence. *See Watson*, 1993 WL 425128, at *2. While the Circuit Court may have rejected Davis's argument, the sentencing judge relied on the lab reports in arriving at the applicable drug weight, and Davis does not challenge the accuracy of the lab reports.

10.     **Claim C.7: Ineffective Assistance of Counsel Based on Stafford's Failure to Challenge or Correct the Circuit Court's Confusion**

In Claim C.7, Davis points to multiple instances where the Circuit Court expressed

confusion and asserts ineffective assistance of counsel based on Stafford's failure to correct or

challenge the Circuit Court's confusion.[21]

For example, Davis first asserts that Stafford failed to correct the Circuit Court's

confusion as to the elements of accommodation. Although Davis fails to cite to a specific

portion of the record, Davis likely refers to the following exchange as Stafford argued for

corrections to the PSR:

> MR. STAFFORD: . . . . [A]t the top of the page it says . . . "A sale for profit." My client's position is that he did not sell this for profit so if The Court would just note that because he will testify on that.
> THE COURT: Oh. You mean, because he sold because he felt threatened or something? I mean, I read the –
> MR. STAFFORD: Yes. Yes.
> THE COURT: – the statement of facts.
> MR. STAFFORD: Yes. Yes.
> THE COURT: Okay. But that's the crime, isn't it?
> MR. STAFFORD: Yes, it is the crime.
> THE COURT: I mean, I don't think it's – it's profit in terms of just sheer getting money for something, it's not in terms of what your intentions are.
> MR. STAFFORD: Well –
> . . . .
> THE COURT: I mean, you're going to have to do some explaining . . . .

Oct. 1, 2004 Sentencing Hr'g Tr. 4:11-5:13.

Even assuming this exchange reflects the Circuit Court's confusion as to the elements of

accommodation, the record demonstrates that Stafford made a tactical decision in not

---

[21] As a part of Claim C.7, Davis challenges Stafford's handling of the Presentence Investigation Report (hereinafter "PSR"). Because this challenge duplicates and/or relates to other claims raised by Davis, the Court will address it along with Claims C.9, C.20, C.23, and L. *See infra* Part III.C.12.

41

immediately challenging the Circuit Court. Instead, in subsequent sentencing hearings, Stafford

further explained the theory of accommodation and called several witnesses, including Davis, to

support Davis's contention that he sold drugs not for profit but solely in response to threats made

by Tony.

The Court declines to second guess this tactical decision on collateral review and cannot

find Stafford's performance deficient. *See Strickland*, 466 U.S. at 689. Further, the record

makes clear that the Circuit Court did not find Davis's theory of accommodation persuasive. In

explaining the reason behind the sentence imposed, the sentencing judge described Davis as a

"con man" who was "savvy around drugs" and who "knew exactly what [he was] doing." Dec.

17, 2004 Sentencing Hr'g Tr. 95:7, 15, 16. Thus, Davis fails to show any prejudice.

The Court declines to address in detail the remaining instances of confusion raised by

Davis because any alleged confusion was immediately corrected without the intervention of

counsel.[22] Because they justified no intervention of counsel and resulted in no prejudice to

Davis, he cannot demonstrate ineffective assistance of counsel in Stafford's failure to intervene.

### 11.   Claim C.8:  Ineffective Assistance of Counsel Based on Rush to Judgment

Davis contends in Claim C.8 that Stafford failed to challenge and even encouraged the

Circuit Court's rush to judgment.[23] Contrary to Davis's assertion, the record shows that Stafford

---

[22] For example, Davis challenges Stafford's failure to intervene when the Circuit Court announced that the parties appeared for sentencing and a revocation hearing. However, the Circuit Court thereafter immediately corrected itself by acknowledging that they were present only for sentencing.

[23] For example, Davis points to Stafford's comment that he would "try to move through this as quick as possible." Oct. 1, 2004 Sentencing Hr'g Tr. 5:16-17.

requested and received two continuances to ensure that Davis had a full opportunity to tell his story. The record reflects that the three sentencing hearings totaled approximately two hours and forty-five minutes. Stafford reasonably determined that any lengthier presentation of Davis's case would try the Circuit Court's patience and would not inure to Davis's benefit. Davis also fails to show how any lengthier hearing or further deliberation would have resulted in a lesser sentence.

### 12.   Claims C.9, C.20, C.23, L:   Mishandling of the "Offender's Version Statement"

These claims relate to the alleged mishandling of Davis's "offender's version statement."[24]  (Pet. Ex. 2, at 22, 35, 39, 80.)  In Claim L, Davis argues that the Probation Officer mishandled his statement, made unauthorized edits, and then willfully deceived the Circuit Court as to the status of his statement in violation of his due process rights. Claims C.9 and C.20 assert ineffective assistance of counsel claims against Stafford based on his failure to challenge this misconduct by the Probation Officer and his failure to challenge the Circuit Court's comments about the offender's version. In Claim C.23, Davis contends that Stafford created confusion and prejudiced Davis by allowing multiple versions of his "offender's version" to be included as part of the record without giving Davis the opportunity to review them for accuracy.

At the first sentencing hearing, Stafford advised the Circuit Court that the PSR contained an incomplete offender's version. The Probation Officer explained that Davis provided him with two sets of written statements, that he mistakenly believed the second statement superseded the first, and that he had recently mailed the first statement back to Davis. Stafford clarified that the

---

[24] A defendant may choose to give a statement, called the "offender's version," for inclusion in the PSR.

second statement should have been integrated with the first statement and requested a continuance so that Davis's first statement could be included in the PSR after receiving it in the mail.

At the second sentencing hearing, Stafford told the Circuit Court that Davis never received the first statement in the mail and that upon further inquiry the Probation Officer located Davis's first statement in his files but did not have enough time before the hearing to make an addendum to the PSR. The Probation Officer commented that Stafford and Davis had waited over three weeks before informing the Probation Office that Davis had not received the first statement in the mail, and Stafford countered that the Probation Officer had the first written statement in his files for four months. The Circuit Court made various comments about the current state of the offender's version, including: (1) "there's something extreme about this. There's something odd about it." Nov. 5, 2004 Sentencing Hr'g Tr. 6:6-7; (2) "it's somewhat incomprehensible. I can't make much sense out of it." Nov. 5, 2004 Sentencing Hr'g Tr. 6:10-11; and, (3) "it's a betrayal of a mental illness or something because this is excessive." Nov. 5, 2004 Sentencing Hr'g Tr. 6:22-23. In response Stafford again explained how and why the offender's version was incomplete and asked for more time so that Davis could complete and clarify his statement. Stafford asked for and received a continuance to ensure that the record included a complete offender's version.

At the final sentencing hearing, Stafford asked that two complete versions of Davis's statement be included, even though they were "substantially the same, almost verbatim," to ensure the record contained Davis's full statement. Dec. 17, 2004 Sentencing Hr'g Tr. 4:4-5.

The Circuit Court stated that the offender's version "made a lot more sense" with the addition. Dec. 17, 2004 Sentencing Hr'g Tr. 7:5-6.

Far from showing deficient performance, this record demonstrates that Stafford competently acted to correct confusion, protect his client's interests, respond to the Court's comments, and afford Davis the opportunity to share his full version of the events. Stafford appropriately brought the Probation Officer's misunderstandings and mistakes to the Circuit Court's attention and received two continuances to ensure that Davis had a full and fair opportunity to share his theory of the case. Likewise, based on these facts, the Court cannot find deficient performance in Stafford's decision to include two versions of Davis's statement in the record without giving Davis the opportunity for further review. Regardless, no prejudice resulted. Davis fails to demonstrate that these versions contained inaccurate information or that their inclusion caused confusion or otherwise undermined his case. Indeed, the Circuit Court acknowledged that Davis's statement made more sense with the addition.

Davis's due process claim also fails. Aside from the fact that no evidence suggests the Probation Officer acted in a "willfully deceptive" manner (Pet. Ex. 2, at 80), Davis fails to show he was denied a full and fair opportunity to present his case or that he was sentenced based on materially false or unreliable information.

### 13.   Claim C.10:  Ineffective Assistance of Counsel Based on Confusing Statements

Davis argues that Stafford made confusing and incoherent statements throughout his sentencing hearing, but provides only two examples. First, Davis contends Stafford asked the Court to recognize the presence of Davis's father at one of the sentencing hearings, but then later

argued that Davis had no father. However, the record shows that Stafford asked the Court to recognize Davis's step-father, and testimony from Davis's mother indicates that Davis was raised principally by his mother and without a father figure. Second, Davis argues that Stafford mispronounced the names of persons present at the sentencing hearing in support of Davis. This ineffective assistance of counsel claim fails because Stafford's statements and mispronunciations do not constitute deficient performance and in no way prejudiced Davis.

### 14.    Claims C.11, F.1, H.1:  False Testimony as to Why Davis Was Targeted

These claims challenge a statement made by the Commonwealth's Attorney during Davis's plea hearing and Stafford's failure to object to the statement. While providing the basis in fact for Davis's guilty pleas, the Commonwealth's Attorney stated: "[Detective Carroll's] confidential informant had contacted a male known only at that time as Rodney. Detective Carol[l] learned that this individual by the name of Rodney was a curr[e]nt distributor of cocaine." Plea Hr'g Tr. 11:9-13. Davis contends that no evidence supports the statement that he was a "curr[e]nt distributor of cocaine." Plea Hr'g Tr. 11:12-13.

These claims lack factual merit. Although the parties disagreed about the motivation behind Davis's actions, Davis admitted that he offered to do multiple drug deals with Tony and completed two drug deals with Tony. Therefore, the statement made by the Commonwealth's Attorney cannot be characterized as inaccurate or improper, and Stafford reasonably abstained from objecting to the statement.

### 15.    Claims C.12, C.13, C.24, F.2, F.3, H.2, H.3:  False Criminal Acts and Unrelated Prior Bad Acts

These claims challenge the Commonwealth's Attorney's questions about Davis's criminal history during a sentencing hearing and assert ineffective assistance of counsel because Stafford opened the door to these questions and/or failed to object to these improper questions. Specifically, Davis contends the Commonwealth's Attorney improperly referenced the incorrect date for a charge and conviction,[25] suggested Davis had been convicted of an offense when in reality he had only been charged with that offense,[26] and questioned witnesses about Davis's other past crimes.[27]

The Court finds no merit in the ineffective assistance of counsel claims based on this conduct.  Under Virginia law, a sentencing judge may consider the defendant's criminal history in imposing a sentence.  Va. Code § 19.2-299; *Thomas v. Commonwealth*, 446 S.E.2d 469, 471-72 (Va. Ct. App. 1994).  Because the sentencing judge possessed an accurate account of Davis's

---

[25] The Commonwealth's Attorney incorrectly stated that the charge *and* conviction for distribution of ecstacy occurred in 2002, while Davis testified that this offense and conviction occurred in 2003.  The PSR reflects an offense date in 2002 and a sentencing date in 2003 for distribution of ecstasy.  PSR 10.

[26] The Commonwealth's Attorney asked a witness the following question: "Were you aware that he was found guilty of assault with a deadly weapon in the District of Columbia in 1993?"  Dec. 17, 2004 Sentencing Hr'g Tr. 17:20-22.  However, the PSR reflects a charge for assault with a deadly weapon, but a conviction of simple assault.  PSR 10.

[27] The Commonwealth's Attorney also questioned a witness about Davis's conviction for carrying a pistol without a license.  *See* PSR 10.

47

criminal history in the PSR,[28] Stafford did not perform deficiently or prejudice Davis by opening the door to such questions or by failing to object to the line of questioning.

Davis's claims against the Commonwealth's Attorney fail for the same reason. Davis cannot demonstrate that this line of questioning prejudicially affected his substantial rights so as to deprive him of a fair hearing because the sentencing judge possessed an accurate account of his criminal history. *See Jones*, 471 F.3d at 542.

### 16. Claims C.14, F.4, H.4: Statement Regarding Inconsistencies in the Offender's Version

In these claims, Davis challenges a statement made by the Commonwealth's Attorney referring to inconsistencies in the offender's version and Stafford's failure to object to this statement. The Commonwealth's Attorney made the following statement during closing argument at sentencing: "I leave aside for the moment whether his lengthy admission, that is, the offender's version, has any credibility or is so laden with internal inconsistencies that Your Honor may think that he's neither remorseful nor truthful." Dec. 17, 2004 Sentencing Hr'g Tr. 64:12-16. Davis characterizes this statement as inaccurate and improper, arguing that no such internal inconsistencies exist. Having reviewed the offender's version, the Court does not find this statement improper or inaccurate. Thus, these claims lack factual merit.

### 17. Claims C.15, C.30, F.5, H.5, M.1, N, O.2, O.3: Characterization of Davis as a Known Drug Dealer and a Predator

These claims relate to two allegedly inaccurate characterizations. First, Davis challenges the characterization of Davis as a "predator" as a violation of his due process rights and

---

[28] Davis does not challenge the accuracy of the criminal history narrative included in the PSR.

challenges Stafford's failure to object to that characterization as ineffective assistance of counsel.

(Pet. Ex. 2, at 29, 55, 70.)  During closing argument at sentencing, the Commonwealth's

Attorney stated:

> Among the many distributors of hard drugs that Your Honor has had before the Court, it seems quite likely that they divide into two categories.  One is the rather pathetic drug user who sells drugs in order to get money to pay for his portion of the drugs he uses.
> . . . . This Defendant is a predator.  This Defendant does not use drugs himself, he tells Your Honor.  He is selling drugs to other people.

Dec. 17, 2004 Sentencing Hr'g Tr. 64:22-65:9.  Davis contends that this characterization, made

by the Commonwealth's Attorney and adopted by the Circuit Court, was unsubstantiated and

unfair.

Second, Davis challenges the Circuit Court's characterization of Davis as a "known drug

dealer" as a violation of his due process rights and challenges Stafford's failure to object to that

characterization as ineffective assistance of counsel.  (Pet. Ex. 2, at 46, 83, 85, 88.)  Davis

contends he was sentenced under the false assumption that he was a known drug dealer.

Davis's due process claims fail because he has not demonstrated the inaccuracy of these

characterizations.  *See Watson*, 1993 WL 425128, at *2.  Based on the Commonwealth's theory

of the case, the "predator" characterization cannot be deemed inaccurate.  As for the "known

drug dealer" characterization, the record reflects that at the time of the instant offenses, Davis

had previously been arrested and charged with distributing ecstasy in Arlington.  For the same

reasons, Davis's ineffective assistance of counsel claims fail.  Considering the record, Davis

cannot demonstrate that Stafford's failure to object was objectively unreasonable or prejudicial.

18.   **Claims C.16, C.25, F.6, H.6:  Statements About Whether Davis Was Nervous During the Drug Transactions**

These claims all relate to the question of whether Davis exhibited nervousness during the drug transactions.  During the sentencing hearing, Davis testified that he was extremely nervous during both drug transactions.  Detective Carroll, on the other hand, testified that Davis appeared more cautious than nervous.[29]  While they had originally agreed to exchange four and a half ounces of cocaine for $4,000, Davis produced only four ounces at the first meeting, and Detective Carroll offered Davis $3,800.  Detective Carroll testified:

> At that request [Davis] pulled out his cell phone and looked at his calculator and appeared to be tabulating the price of the cocaine, and said okay, I can do it for that. He made me think he was trying to figure out how much he was going to make or how much it was going to cost him to sell it.  There would be no other reason to pull out a calculator.

Dec. 17, 2004 Sentencing Hr'g Tr. 50:12-18.  Detective Carroll also stated that Davis did not consult with anyone else before agreeing to the new price.  The Commonwealth's Attorney used this testimony during argument:

> This Defendant tells Your Honor that he was extremely nervous because he was merely accommodating . . . Tony, of whom he was afraid.
> Detective Carroll has told you that he did not appear to be afraid or nervous and has told you about behavior that is absolutely inconsistent with nervousness, that he was doing calculations.

Dec. 17, 2004 Sentencing Hr'g Tr. 65:17-66:2.

Davis argues that the calculations were necessary to derive a new price, that "the calculations were in no way a reliable barometer of [Davis's] level of nervousness," and that

---

[29] Despite Davis's contention otherwise, Detective Carroll did not testify that Davis appeared somewhat nervous *during* the drug deals.  Instead, Detective Carroll stated that Davis appeared somewhat nervous when he was told that he was under arrest.

Detective Carroll's testimony that Davis was trying to figure out how much he was going to make on the deal constituted speculation. (Pet. Ex. 2, at 31, 41, 56, 71.) Davis challenges the argument made by the Commonwealth's Attorney as improper and argues Stafford should have objected to such argument. Davis also challenges Stafford's failure to object to Detective Carroll's speculative testimony.

Considering the record, the Court finds nothing improper with the inference and/or argument made by the Commonwealth's Attorney, and Stafford did not perform deficiently or prejudice Davis in failing to lodge an objection. Further, the Court cannot find ineffective assistance of counsel based on Stafford's failure to object to Detective Carroll's testimony. Even in the absence of the challenged statement, the evidence shows that, when asked to renegotiate the price, Davis used the calculator on his cell phone and then, without consulting anyone else as to price, agreed to the new price. Considering the reasonable inferences that could be drawn from the evidence, Stafford reasonably decided that an objection would not benefit his client. Regardless, Davis has not demonstrated prejudice resulting from Stafford's failure to object.

### 19.    Claims C.17, F.8, H.8: Negotiator of Progressively Larger Drug Deals

These claims challenge the Commonwealth's Attorney's characterization of Davis as "a careful and clever . . . negotiator of progressively larger drug deals" and Stafford's failure to object to that characterization. Dec. 17, 2004 Sentencing Hr'g Tr. 66:20-21. However, the evidence shows that, after the first drug deal involving four ounces of cocaine, Davis attempted to negotiate a drug deal for two kilograms of cocaine. The challenged characterization cannot be deemed improper or without an evidentiary basis, and these claims lack merit.

**20.    Claims C.18, F.10, H.10, J:  Reference to Davis's Post-*Miranda* Silence**

Here, Davis argues that the Commonwealth's Attorney improperly referred to Davis's

post-*Miranda* silence to impeach his testimony and that Stafford failed to object.  Davis

specifically challenges the following statement made by the Commonwealth's Attorney during

arguments at sentencing:

> These convictions are not his first convictions for drug deals.  We ask Your Honor
> to take that into account in determining whether this late explanation – because once
> this case was indicted was the first time that Your Honor or the first time that anyone
> has heard this explanation.
>     He did not say it to the police at the time; he did not say it to anybody else at
> the time.

Dec. 17, 2004 Sentencing Hr'g Tr. 66:21-67:5.

A prosecutor may not use a defendant's post-arrest, post-*Miranda* silence to impeach the

defendant's testimony at trial or as evidence of guilt during the state's case-in-chief because it is

fundamentally unfair for the government to induce silence through *Miranda* warnings and then

later use that silence against the accused.  *Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986);

*Doyle v. Ohio*, 426 U.S. 610, 619-20 (1976).  However, when the accused waives his right to

remain silent and agrees to questioning, no such inducement has occurred.  *Strickland v. Lee*, 471

F. Supp. 2d 557, 622 (W.D.N.C. 2007) (*citing Anderson v. Charles*, 447 U.S. 404, 408 (1980)).

Regardless, to obtain habeas relief, the petitioner must show that the improper use of the post-

*Miranda* silence "'had [a] substantial and injurious effect or influence in determining the jury's

verdict.'"  *Brecht*, 507 U.S. at 638 (*quoting Kotteakos v. United States*, 328 U.S. 750, 776

(1946)); *see Truesdale v. Moore*, 142 F.3d 749, 756-57 (4th Cir. 1998).

Here, Davis's own version of events indicates that he did not exercise his right to remain silent and instead spoke extensively to the police after his arrest. PSR 2e. Because nothing in the record suggests Davis invoked his right to remain silent, Davis fails to demonstrate that the argument made by the Commonwealth's Attorney was improper or unfair. *See Anderson*, 447 U.S. at 408 (finding no constitutional error in the prosecution's inquiry into prior inconsistent statements because the defendant voluntarily spoke after receiving *Miranda* warnings). Nevertheless, Davis fails to show that this argument had a substantial and injurious effect or influence on the sentencing judge's decision.

### 21.   Claims C.19, F.7, H.7:  Commonwealth's Assertion that Davis's Testimony Was Inconsistent

In Claims C.19, F.7, and H.7, Davis contends that the Commonwealth's Attorney improperly characterized his testimony as inconsistent and that Stafford incompetently failed to lodge an objection.

During his testimony at sentencing, Davis stated that he told his former attorney and the Arlington Police Department that he "had a major drug buyer[, Tony,] that [he] could turn over." Dec. 17, 2004 Sentencing Hr'g Tr. 35:21-36:7. He also testified that he reported Tony's threats to a former attorney, but never reported those threats to the police. During arguments, the Commonwealth's Attorney stated that Davis gave inconsistent testimony which the judge should consider in determining credibility:

> [I]n his direct examination he said he was so frightened of Tony that he told the police about the threats that Tony was making against him.
>     On cross examination he said two different things . . . . The first thing he said was I didn't tell the police, but I told my lawyer. The second thing was he didn't tell anyone about the threats from Tony.

Dec. 17, 2004 Sentencing Hr'g Tr. 67:8-16.  In response, Stafford later argued that Davis's statements were not truly inconsistent: "[Davis] said well no, I didn't tell the police that; I told

my lawyer. Then I told the police that I had a dealmaker and so forth and so forth. He clarified that." Dec. 17, 2004 Sentencing Hr'g Tr. 68:20-23. Stafford further said that "it's all consistent" and described Davis as being "very candid." Dec. 17, 2004 Sentencing Hr'g Tr. 69:8, 11.

It appears the characterization of Davis's statements made by the Commonwealth's Attorney was indeed inaccurate. However, considering the record as a whole (including Stafford's response), the Court cannot find that the Commonwealth's Attorney's contention "'so infected the [sentencing] with unfairness as to make the resulting [sentence] a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Jones*, 471 F.3d at 542. The transcripts make clear that the sentencing judge simply did not believe Davis's story, and even setting aside this inaccurate statement, the record contains ample support for her credibility determination.

Davis's ineffective assistance of counsel claim also fails. Instead of lodging an objection in the middle of the Commonwealth's argument, Stafford reasonably decided to respond during his argument. Contrary to Davis's assertion, this tactical decision was neither incompetent nor prejudicial. *See Fitzgerald v. Thompson*, 943 F.2d 463, 470-71 (4th Cir. 1991).

### 22.    Claim C.21:  Ineffective Assistance of Counsel Because Stafford Did Not Effectively Present Defenses

In Claim C.21, Davis argues that Stafford ineffectively presented the defense of accommodation.[30] The record reflects otherwise. Stafford called five witnesses on Davis's behalf, competently elicited testimony to support Davis's theory of the case, and properly argued

---

[30] While this claim also mentions a defense of restitution, the Court believes this defense relates to accommodation. (*See* Pet. Ex. 2, at 36 (referencing the defense of restitution with the argument that he received no compensation for the drug transactions).)

Davis also asserts ineffective assistance of counsel based on Stafford's failure to effectively present a duress or diminished capacity defense. For the reasons stated in assessing Claims A.3 and B.1, the Court finds no merit in this claim. *See supra* Part III.C.3.

the theory of accommodation. Despite Stafford's competent performance, the Circuit Court simply found Davis's story implausible. Further, Davis fails to suggest how Stafford should have presented the case differently and fails to demonstrate a reasonable probability that the result of the sentencing would have been different.

> **23.    Claims C.22, C.31: Ineffective Assistance of Counsel Based on Stafford's Refusal to Call Witnesses at Sentencing and Presentation of Unprepared Witnesses**

Davis contends in Claim C.22 that Stafford refused to call available and material character witnesses. Claim C.31 alleges that Stafford failed to interview and prepare the witnesses called at sentencing and thus failed to elicit exculpatory evidence they possessed.

The state habeas courts found these claims "too conclusory to state . . . cognizable claims of ineffective counsel, especially with respect to the required showing of actual prejudice." State Hab. Op. 9. The Court cannot find that this decision involved an unreasonable application of the law or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Davis fails to identify the names of witnesses that should have been called and/or the information these witnesses would have provided if called to testify.[31] Likewise, Davis fails to detail the exculpatory evidence Stafford failed to elicit from the witnesses who did testify. Davis's conclusory allegations insufficiently demonstrate deficient performance or prejudice under *Strickland*. *See Bassette*, 915 F.2d at 940-41.

---

[31] Although Davis identifies one witness and details the information she possessed, he failed to present this information in his state habeas petition. Therefore, the Court cannot consider this information. *See supra* note 11.

24.    **Claim C.26: Ineffective Assistance of Counsel Based on Stafford's Failure to Challenge Testimony About the Quantity of Cocaine Seized During the Second Drug Transaction**

Here, Davis claims ineffective assistance of counsel based on Stafford's failure to object to Detective Carroll's testimony as to the quantity of cocaine involved in the second drug transaction. At the sentencing hearing, Detective Carroll mistakenly testified that Davis produced four and a half ounces of cocaine during the second drug deal. However, the lab reports, the PSR, and the Commonwealth's statement of facts all indicate that Davis distributed approximately four ounces of cocaine in the second deal. Considering the record and because the parties agreed that the second deal involved approximately four ounces of cocaine, Stafford's decision not to object to Detective Carroll's mistaken testimony did not constitute deficient performance and did not prejudice Davis.

25.    **Claim C.27: Ineffective Assistance of Counsel Based on Stafford's Failure to Challenge Testimony Relating to the Money Seized During the Second Drug Transaction**

Claim C.27 asserts ineffective assistance of counsel based on Stafford's failure to raise a Confrontation Clause challenge to Detective Carroll's testimony relating to the money seized during the second drug transaction. At the sentencing hearing, Davis testified that he never received the $4,000 from the second drug transaction because he fled after seeing movement. He further explained, "The police version says they recovered the money on the windshield of the car. I don't know where the money – I never saw any cash. There was no cash recovered from me because I took off and ran across the parking lot." Dec. 17, 2004 Sentencing Hr'g Tr. 34:14-18.

Contrary to Davis's testimony, Detective Carroll later testified that he had given Davis the $4,000 and that Davis threw the bag of money as he exited the vehicle and attempted to flee

56

from the arrest team. Detective Carroll further stated, "The money was recovered from the right front windshield area on top of the windshield wiper and was recovered and given to me by another Detective." Dec. 17, 2004 Sentencing Hr'g Tr. 55:21-23. Davis asserts that Stafford should have challenged this last statement under the Confrontation Clause because this other detective did not testify as to "where and how the funds in question were recovered." (Pet. Ex. 2, at 43.)

Even assuming the Confrontation Clause applies at sentencing and a violation of Davis's Confrontation Clause rights exists, the Court rejects Davis's ineffective assistance of counsel claim. The substance of Davis's previous testimony included essentially the same statement as made by Detective Carroll. Under these facts, Stafford reasonably decided not to object because Davis had nothing to gain from the exclusion of this evidence. For the same reason, Davis cannot show prejudice resulting from Stafford's failure to object.

### 26. Claims C.29, I:  Selective Prosecution

In Claim I, Davis contends the Commonwealth's Attorney violated his Fourteenth Amendment right to equal protection[32] by engaging in selective prosecution. Claim C.29 asserts ineffective assistance of counsel based on Stafford's failure to challenge the selective prosecution. Davis argues that the Commonwealth prosecuted him only, even though it possessed "ample evidence that [Davis] acted in concert with others" and had "direct knowledge of [Davis's] co-conspirators." (Pet. Ex. 2, at 45, 77-78.)

To establish a claim for selective prosecution, Davis must show: "(1) that he has been 'singled out' while others similarly situated have not been prosecuted; and (2) that the decision to

---

[32] The Equal Protection Clause provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

prosecute him was invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to exercise his constitutional rights." *United States v. Greenwood*, 796 F.2d 49, 52 (4th Cir. 1986) (*quoting United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)). Davis fails to present any evidence of bad faith or invidious intent, and the record before the Court contains no such evidence. Therefore, his selective prosecution claim must fail. For the same reasons, the Court cannot find deficient performance or prejudice in Stafford's failure to raise a selective prosecution challenge.

27.   **Claim K: Due Process Violation Based on the Probation Officer's Failure to Ensure the Accuracy and Reliability of Information Contained in the Presentence Investigation Report**

In this claim, Davis asserts that the Probation Officer failed to ensure the accuracy, reliability, completeness, or fairness of the information contained in the PSR. Specifically, Davis contends that the Probation Officer did minimal investigation, failed to interview Davis's family, employers, or associates, and included nothing positive about Davis in the PSR.

However, Davis fails to specifically identify what further investigation should have been performed, who the Probation Officer should have interviewed, and what information would have been discovered. Davis's due process claim fails because he has not demonstrated that the Circuit Court relied on materially false or unreliable information in arriving at his sentence. *See Watson*, 1993 WL 425128, at *2. Davis's conclusory allegations insufficiently demonstrate that unreliable information served as a basis for his sentence. *See Bassette*, 915 F.2d at 940-41.

## IV.  Certificate of Appealability

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). No law or evidence suggests that Davis is entitled to further consideration in this matter. A certificate of appealability is therefore DENIED.

## V. Conclusion

For the foregoing reasons, the Court finds that the claims presented in Davis's § 2254 Petition lack merit. Accordingly, Davis's claims will be DISMISSED and his § 2254 Petition (Docket No. 1) will be DENIED. This action will be DISMISSED, and a COA will be DENIED.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 3/28/12